IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JESSICA MAE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:25-05002-CV-RK |
| | ) |
| COMMISSIONER OF SSA; | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff Jessica Mae Johnson's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **REVERSED and REMANDED**.

**Background**

Plaintiff filed a protective application under Title II of the Social Security Act for disability and disability insurance benefits and a protective application under Title XVI of the Social Security Act for supplemental security income. After Plaintiff's applications were denied at both the initial and reconsideration levels, Plaintiff requested a hearing before an ALJ. Following a hearing, the ALJ issued an unfavorable decision, which was subsequently reversed and remanded by this Court. *See Johnson v. Kijakazi*, No. 3:21-cr-05082-RK (W.D. Mo. Jan. 13, 2023) (doc. 15). On remand, another hearing before an ALJ was held, and the ALJ again issued an unfavorable decision finding Plaintiff not disabled for purposes of receiving social security benefits. The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff accordingly seeks judicial review of the ALJ's second unfavorable decision denying her applications to receive social security benefits.

**Discussion**

The Court's review of the ALJ's social security decision denying Plaintiff's application for social security disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981

(8th Cir. 2008)). Here, Plaintiff raises one issue on appeal: whether the ALJ erred as a matter of law in assessing the medical opinions provided by Arlynna Hendrix, a certified physician assistant, P.A.-C, regarding Plaintiff's physical and mental limitations for her ability to function in a workplace.

I.  **ALJ's Decision**

PA-C Hendrix, treated Plaintiff at Mercy Clinic Family Medicine 50th Street Clinic in February and May 2023.[1] (*See* Tr. 2094, 2100.) In September 2023, she provided both a "Medical Source Statement—Physical" and a "Medical Source Statement—Mental" on behalf of Plaintiff. (Tr. at 2228-30, 2233-34.) In the physical medical source statement, PA-C Hendrix noted that Plaintiff suffered from chronic and daily pain and fatigue and decreased focus and concentration (primarily decreased long-term memory and concentration) and diagnosed Plaintiff with chronic migraine without aura, fibromyalgia, gastroesophageal reflux disease, history of traumatic brain injury, and chronic bilateral low-back pain. (Tr. at 2228.) She opined that as a result of Plaintiff's conditions, Plaintiff:

(1) could never lift/carry 50 pounds, rarely lift/carry 10-20 pounds, and occasionally lift/carry less than 10 pounds;

(2) could never crawl or climb; rarely stoop, balance, and crouch, but could occasionally twist;

(3) could never reach, handle, finger, or feel;

(4) could sit or stand for 30 minutes before needing to change positions or walk around; that she would need to shift positions at will from sitting, standing, or walking; and that she can sit and stand for a total of less than 2 hours in an 8-hour workday;

(5) would need to take 10-15 minute breaks every 2-3 hours during an 8-hour workday, and would miss work or need to leave early approximately 4 days per month;

(6) would likely be off task 20 percent of the time; and

(7) would be capable of low stress work.

(Tr. at 2229.)

---

[1] Mercy Clinic Primary Care or Mercy Clinic Family Medicine was Plaintiff's primary care provider beginning in July 2020. While Plaintiff saw other providers, PA-C Hendrix saw Plaintiff for two of her three-month follow-up appointments. (Tr. 2094, 2100.)

PA-C Hendrix's mental medical source statement similarly opined that Plaintiff would need to miss work or leave work early approximately 4 days per month and was likely to be off task for 20 percent of the time. (Tr. at 2233.) She opined that Plaintiff had mild and moderate limitations in (1) understanding and memory, (2) concentration and persistence (with marked limitations in maintaining attention and concentration for extended periods and the ability to complete a normal workday and workweek without interruption at a consistent pace without an unreasonable number and length of rest periods), (3) social interaction, and (4) adaptation. (Tr. at 2233-34.)

As relevant here, the ALJ found that Plaintiff has the residual functional capacity ("RFC")[2] to perform sedentary work with the following limitations:

> she can lift 10 pounds occasionally and 5 pounds frequently and can stand and/or walk for a cumulative total of 2 hours during an 8-hour workday but for no more than 30 minutes continuously and can sit for a cumulative total of 8 hours during an 8-hour workday. While performing seated work she requires the opportunity to make a positional change every 30 minutes; such positional change can be performed at the workstation and without being off task and would consist of the ability to stand, briefly, for a period not to exceed 3 minutes. In addition, she can use her lower extremities to operate foot controls on a frequent basis. She can occasionally climb ramps and stairs but can never climb ladders and scaffolds, and can occasionally stoop, kneel, and crouch, but can never crawl. The claimant must work in an environment that will not result in concentrated exposure to extreme cold, to vibration, or to respiratory irritants such as fumes, odors, and dust. In addition, she cannot work in an environment that would result in more than rare exposure to flashing lights and would need to work in an environment with a noise level no greater than moderate, or Level 3 as described in the Selected Characteristics of Occupations. In addition, the claimant must work in an indoor environment. The claimant can understand, remember, and carry out simple instructions, and can maintain concentration, persistence, and pace sufficient to perform work that consists of simple, routine tasks, requiring only simple workplace judgments, in an environment that does not require performing fast-paced production work. In addition, the claimant must work in an environment that does not require interaction with the public, and requires only occasional interaction with coworkers; however, she can tolerate frequent interaction with supervisors. She can recognize and avoid hazards, adjust to changes, and accept direction and respond appropriately to criticism while working in an environment that requires performing only simple routine tasks in the socially limited environment described.

(Tr. at 856.)[3]

---

[2] A social security claimant's RFC "is the most [she] can do despite [her] [physical and mental] limitations," and is assessed by the ALJ "based on all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1).

[3] The ALJ's ultimate RFC determination was thus both more and less restrictive than PA-C

3

In analyzing the medical opinions and prior administrative medical findings, the ALJ found generally unpersuasive the medical opinions of PA-C Hendrix and Dr. Michael O'Day (a consulting physician at the state disability services reconsideration level). The ALJ first noted that Dr. O'Day's medical opinion "is not consistent with subsequent medical evidence that shows similar findings on exams" as the evidence that Dr. O'Day had reviewed at the state disability services review stage. This evidence included (1) that Plaintiff retained 5/5 motor strength, intact sensation, and normal gait on exams, (2) susceptibility to light due to her migraines and chronic post-traumatic headaches "but no symptoms analogous to seizures on neurological examinations," (3) "widespread tenderness with multiple focal tender points and trigger points secondary to fibromyalgia but no evidence of muscle wasting," (4) a "diagnosis of vasovagal syncope with symptoms of dizziness and passing out but no associated cardiac or neurological symptomatology," as well as (5) "BMI values over 30 kg/m2, which could exacerbate her musculoskeletal and neurological symptoms." (Tr. at 860.) The ALJ then indicated that he found PA-C Hendrix's opinion "generally unpersuasive considering the foregoing reasons," i.e., for the same reasons he found Dr. O'Day's opinion to be unpersuasive.

At the same time, the ALJ found the opinion of Dr. Lauren Christine Frey, who testified at the hearing as a medical expert, to be persuasive "for the reasons stated above" (i.e., referring to the discussion of Dr. O'Day and PA-C Hendrix's opinions). (Tr. at 861.) The ALJ noted that Dr. Frey opined at the hearing that due to Plaintiff's migraine headaches, syncope, and lumbar spondylosis, Plaintiff retained an RFC with greater abilities than what the ALJ ultimately imposed. For instance, Dr. Frey opined, *inter alia*, that Plaintiff could frequently lift/carry 10 pounds and could occasionally lift/carry 20 pounds; that she could sit for 6 hours and stand and/or walk for 4 hours in an 8-hour workday; and that she could frequently climb ramps and stairs. (*Id.*)

As to Plaintiff's mental RFC, the ALJ found the opinion of Dr. Thomas Kuich (a treating mental health specialist) to be unpersuasive and PA-C Hendrix to be generally unpersuasive, reasoning that "[t]he objective medical evidence does not support limitations beyond a moderate degree in any area of mental functioning." (*Id.*) The ALJ noted specifically that the objective medical evidence illustrated that Plaintiff "remained stable with treatment," and "did not experience any episode of decompensation" or psychiatric hospitalization. (*Id.*) Similar to the

Hendrix's medical source statement opinions.

physical medical opinion analysis, the ALJ first analyzed the mental health opinion of Dr. Kuich and then found that "[s]imilarly, . . . the opinion from PA Hendrix . . . [is] generally unpersuasive for the reasons stated above," i.e., the ALJ's analysis of Dr. Kuich's opinion. The ALJ specifically noted that "[t]he objective medical evidence shows that [Plaintiff] demonstrated . . . generally normal attention and concentration upon mental status evaluations." (Tr. at 854.)

In addition, the ALJ found the opinion of the consulting mental health services at the state disability services reconsideration level, Dr. Marsha Toll, to be "generally persuasive," finding in part that although Plaintiff "demonstrated deficits in delayed recall and attention on the Montreal Cognitive Assessment test," she also displayed "generally normal memory, average intelligence, and normal attention and concentration upon mental status evaluations." (Tr. at 861.)

## II. Evaluation of Medical Opinion Evidence—Supportability and Consistency

On appeal, Plaintiff argues that the ALJ did not properly evaluate or weigh PA-C Hendrix's medical opinions under 20 C.F.R. §§ 404.1520c and 416.920c. In evaluating medical opinion evidence, the relevant SSA regulations require that the ALJ must consider the persuasiveness of each medical opinion. In doing so, the ALJ is guided by five factors to consider: "supportability, consistency, relationship with the claimant (including length of treatment relationship, frequency of examination, purpose of treatment relationship, and examining relationship), specialization, and other factors that tend to support or contradict a medical opinion." *Engum v. Kijakazi*, No. 20-06110-CV-SJ-WBG, 2022 WL 902740, at *2 (W.D. Mo. Mar. 28, 2022) (quotation modified). The first two factors—supportability and consistency—"are the most important[.]" *Id.* (internal quotation marks omitted).

In this context, supportability refers to the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinions. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Put another way, supportability considers the evidence offered in support of a proffered medical opinion regarding a plaintiff's work-related limitations as a result of their impairments. *Spiers v. Colvin*, No. 5:23-CV-06116-SJ-JAM-SSA, 2024 WL 5245089, at *4 (W.D. Mo. Dec. 30, 2024) ("Supportability refers to how a medical opinion is supported by relevant objective medical evidence and the medical provider's explanations . . . ."); *see* §§ 404.1520c(c)(1) & 419.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."). Consistency refers to how consistent

the subject medical opinion is with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see Spiers*, 2024 WL 5245089, at *4 ("[C]onsistency measures how the opinion aligns with evidence from other medical and nonmedical sources in the record.")

Here, Plaintiff argues that the ALJ erred as a matter of law because "the ALJ's assessment of PA Hendrix's opinions failed to comply with the regulatory articulation requirements." Specifically, she asserts that "[t]he ALJ provided no articulation of how the factors of supportability and consistency were considered." (Doc. 8 at 10, 12.) The regulations establishing the persuasiveness-evaluation framework for medical opinions, however, require that the ALJ "articulate how [he or she] considered the medical opinions," including specifically (1) "how persuasive [the ALJ] find[s] all of the medical opinions" and (2) how the ALJ "considered all of the factors." 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1). As the Commissioner acknowledges, the relevant regulations also expressly require that the ALJ in particular "explain how [he or she] considered the supportability and consistency factors." §§ 404.1520c(b)(2), 416.920c(b)(2).

The Court is persuaded that the ALJ at a minimum failed to properly consider the supportability of PA-C Hendrix's medical opinion statements in evaluating their persuasiveness. The ALJ's somewhat conclusory discussion of PA-C Hendrix's medical opinion statements *might* be sufficient as to the consistency factor. As indicated above, a natural and common sense reading of the ALJ's decision incorporated the objective medical evidence in the administrative record that undercut (or at least was inconsistent with) Dr. O'Day and Dr. Kuich's opinions to the ALJ's discussion of the persuasiveness of PA-C Hendrix's opinions in the immediately following paragraph. Nothing in the ALJ's discussion of the persuasiveness of Dr. O'Day and Dr. Kuich's opinions make or include any relevant findings as to the supportability of *PA-C Hendrix*'s medical opinion statements, however. The ALJ acknowledges that PA-C Hendrix was one of Plaintiff's treating medical providers, (Tr. at 860), but does not make any finding or include any discussion or consideration of the supportability of PA-C Hendrix's opinion statements.

In *Bonnett v. Kijakazi*, 859 F. App'x 19 (8th Cir. 2021) (per curiam), the Eighth Circuit found reversible legal error where an ALJ adequately evaluated the supportability of a medical expert opinion but "did not address whether [the] opinion was consistent with the other evidence of record, as required by the applicable regulation." *Id.* at 20 (citing *Lucus v. Saul*, 960 F.3d 1066,

1069-70 (8th Cir. 2020); other citation omitted).[4]  As reflected in the district court decision in *Bonnett* (which the Eighth Circuit reversed), the ALJ in that case had found the medical opinion statement by Dr. Thompson not persuasive, explaining that:

> [a]lthough [Dr. Thompson] has a long, treating relationship with the claimant, Dr. Thompson provides little support or explanation for his opinion . . . . In addition, his opinion is not consistent with his own examinations of the claimant. For example, his examinations show mostly normal strength and sensation with variable limits in lumbar range of motion . . . . Furthermore, Dr. Thompson's treatment notes often report that the claimant's functionality and activities of daily living are improved with pain medication . . . . Likewise, Dr. Thompson consistently reported the claimant appeared in no acute distress . . . . Therefore, the undersigned finds Dr. Thompson's opinion is not persuasive.

*Bonnett v. Comm'r, Soc. Sec'y Admin.*, No. 1:20-cv-01032, 2021 WL 816945, at *3 (W.D. Ark. Mar. 3, 2021).

Here, the Commissioner argues that the ALJ made clear that "her explanations for finding [PA-C Hendrix's] opinions unpersuasive consisted chiefly of pointing to the evidence discussed in the remainder of the decision" and the Court should accordingly consider that the "decision is otherwise quite thorough and . . . the record shows that substantial evidence support[s] the administrative law judge's conclusions."  (Doc. 9 at 8.)  The Court is not persuaded by this argument and finds that it is inconsistent with the Eighth Circuit's opinion in *Bonnett* applying *Lucus*, and the standard of review recognized by the Eighth Circuit in *Cropper v. Dudek*, 136 F.4th 809 (8th Cir. 2025).

First, the Court notes that the Eighth Circuit in *Bonnett* rejected essentially the same argument made by the Commissioner here—that to the extent the subject medical opinion "was not consistent with specific other evidence in the record," there is no reversible error.  859 F. App'x at 20.  The Eighth Circuit disagreed, reasoning simply that "the ALJ made no such findings."  *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).  Second, the articulation requirement under §§ 404.1520c(b)(2) and 416.920c(b)(2) for supportability and consistency is an important one.

---

[4] In *Lucus*, the Eighth Circuit recognized that "[t]he failure to comply with SSA regulations is more than a drafting issue, it is [reversible] legal error."  960 F.3d at 1070.  As set out above, and which the Commissioner acknowledges, the applicable regulations require that the ALJ must specifically explain her consideration of the supportability *and* consistency factors, the two most important factors in weighing the persuasiveness of a medical opinion statement.  *Lucus* pre-dated the amendments to the opinion-evaluation framework now codified in §§ 404.1520c and 416.920c.  Thus, the decision by the Eighth Circuit panel in *Bonnett* simply applied *Lucus* to the current regulatory framework which sets forth how an ALJ is required to evaluate the persuasiveness of medical opinion statements in the disability-benefits analysis.

7

Indeed, as the Eighth Circuit recently clarified in *Cropper v. Dudek*, judicial review of an ALJ's determination as to the persuasiveness of a medical opinion is focused only on "whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors." 136 F.4th at 814. Judicial review does not include "whether [the Court] agree[s] with the ALJ's evaluation of the record evidence on those issues." *Id.*; *see id.* at 815 (recognizing that on judicial review the Court does not consider whether the ALJ's "explanation and findings [as to supportability and consistency] were . . . [individually] supported by substantial evidence," but instead focuses on whether the ALJ's "ultimate persuasiveness and residual functional capacity findings are supported by substantial evidence").

The Commissioner cites the district court's opinion in *Trosper v. Saul*, No. 1:20 CV 51 DDN, 2021 WL 1857124 (E.D. Mo. May 10, 2021), as supporting the argument that the Court should consider in this case whether substantial evidence supports the ALJ's overall persuasiveness finding based on the ALJ's decision and the administrative record as a whole. The district court in *Trosper*, after finding that the ALJ "properly articulated" and adequately considered the supportability and consistency of Dr. Thompson's opinion,[5] then turned to the issue of whether the ALJ's persuasiveness conclusion was supported by substantial evidence. *See* 2021 WL 1857124, at *5. In this context, the district court recognized that the ALJ's persuasiveness conclusion "cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Id.* The district court's analysis in *Trosper* appears to be consistent with the Eighth Circuit's formulation of judicial review in social security cases in *Cropper*. The Commissioner's reliance on *Trosper* is misplaced here, though, where Plaintiff is not challenging whether the ALJ's persuasiveness determination is supported by substantial evidence but whether the ALJ properly and adequately considered the required supportability and consistency factors in the first instance

---

[5] Specifically, the district court explained of the ALJ's decision:

[i]n his evaluation of the record evidence the ALJ considered [a Physical Medical Source Statement] completed by Ms. Pullum-Thompson and found it 'not persuasive' because Ms. Pullum-Thompson did not support her opinion with any specific objective medical evidence, and it was not consistent with the remainder of the record evidence, including the plaintiff's own testimony at the hearing. The ALJ discussed the lack of any objective record evidence to support the mental limitations assessed by Ms. Pullum-Thompson, as well as plaintiff's testimony that she did not require the use of a cane.

2021 WL 1857124, at *5.

in light of the articulation requirement.[6]  *Bonnett* applying *Lucus*—neither of which the Commissioner discusses in his opposition brief—is thus the more relevant and applicable case.

The Court disagrees with the Commissioner that the ALJ's mere reference to PA-C Hendrix's treatment records elsewhere in the decision is sufficient to satisfy the requirement that the ALJ consider both the supportability and consistency to evaluate the persuasiveness of a submitted medical opinion to determine Plaintiff's RFC.  Similarly, the Court disagrees with the Commissioner that it is sufficient for purposes of judicial review that "a review of [PA-C Hendrix's] records show that they do not support her highly restrictive opinions." (Doc. 9 at 9.) In short, "the ALJ made no such findings." *Bonnett*, 859 F. App'x at 20.  Because the ALJ at a minimum failed to adequately evaluate the supportability of PA-C Hendrix's opinions as required by the applicable regulations, remand is required.[7]

## Conclusion

Accordingly, after careful consideration and review, the Court **ORDERS** that the ALJ's decision is **REVERSED and REMANDED** for reconsideration by the ALJ consistent with the Court's order as set out above.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  February 11, 2026

---

[6] The Commissioner's other case citations are unavailing for similar reasons.  And the two Eighth Circuit cases cited by the Commissioner applied the prior framework for evaluating medical opinions including the "treating physician rule," and are therefore inapposite under the amended opinion-evaluation framework set out under §§ 404.4520c and 416.920c. *See Bradford v. O'Malley*, 104 F.4th 1055, 1060 (8th Cir. 2024); *Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011); *see also Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (recognizing that prior caselaw considering an ALJ's decision to credit a non-treating physician's opinion over a treating physician's opinion is "legally inapposite" after the revisions to the opinion-evaluation regulations).

[7] On remand, the ALJ should adequately consider and articulate or explain both the supportability and consistency factors as to PA-C Hendrix's opinions as required under §§ 404.1520c(b)(2) and 416.920c(b)(2).